RACHAEL MORRIS v. T. & A. GEISECKE.

(Case No. 1604.)

1. HOMESTEAD.— The husband has no power, directly or indirectly, to alienate property, a portion of the purchase money of which has not been paid, and which is occupied by his wife and himself as a homestead, unless his wife joins in the conveyance, or the same is done in good faith by the husband in settlement of the lien for unpaid purchase money.

2. SAME.— If the husband, who attempts without being joined by the wife to dispose of the homestead, under pretense of satisfying the claim for unpaid purchase money, acts in bad faith when no necessity for sale exists, and with the purpose to deprive his wife of her homestead right, his act conveys no title as against the wife to purchasers with notice. See statement and opinion for such a case.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

The following statement of the case by appellant's counsel was adopted by appellee:

"This suit was filed in the district court of Washington county, 22d day of September, 1879, by Rachael Morris, a married woman, against her husband, Ben Morris (who refused to join her), and F. & A. Geisecke, to recover from F. & A. Geisecke her homestead, alleged to have been sold them by said Ben Morris without her consent. The defendant filed a general demurrer to plaintiff's amended and supplemental petitions, which was sustained by the court and judgment rendered for the defendants.

"Appellant, the plaintiff below, alleged in her petition: That some time prior to January, 1878, she and her husband, Ben Morris, purchased a lot in Brenham from C. R. Breedlove, paying on the same something over $200, and executed their note for the balance of purchase money, $60; that they improved said lot and occupied the same as their homestead; that the said Ben Morris, in the spring of 1879, drove your petitioner from her homestead and refused to let her remain on the same with him; that some time in September, 1879, the said Ben Morris sold the lot and improvements to F. & A. Geisecke for the sum of $150 (which was greatly below its real value), and made them a deed to the property. That the deed was made without the consent, against the will and over the protest of petitioner, and was not signed by her; that the note for $60 given to Breedlove had been before this time reduced by payments to the sum of $40; that as soon as she heard of the sale of her said homestead and the taking up of the unpaid purchase money note by said Geiseckes, she immediately went to the Geiseckes and tendered them the balance of the purchase money on said lot.

"That the said F. & A. Geisecke conspired and combined with the said Ben Morris for the purpose of defrauding her of her homestead, and bought the same from the said Ben Morris at a price greatly below its real value, when they knew that she had refused to join her husband in the sale of said homestead, and that she notified the defendants before they purchased from Ben Morris that she would not join in the deed to her homestead.

"C. R. Breedlove sold the property to appellant and her husband and took their note for $60 in part payment for same. Breedlove sold this note to E. P. Davis, and Davis to Geisecke, after he had purchased the property from Ben Morris."

*W. W. Searcy*, for appellant, cited: Welch v. Rice, 31 Tex., 688; Gaylord v. Loughridge, 50 Tex., 577; Campbell v. Elliott, 52 Tex., 158; Const., art. 16, sec. 50; R. S., art. 560; Bishop on Contracts, §§ 194–196; Bump on Fraudulent Conveyances, pp. 16–19; Austin v. Talk, 26 Tex., 129; Morris v. House, 32 Tex., 495; Cox v. Miller, 54 Tex., 16; Williams v. Barnett, 52 Tex., 130; Zacharie v. Bryan, 2 Tex., 276; Warren v. Bailey, 7 Tex., 519; Williams v. Warnell, 28 Tex., 612.

*Breedlove & Ewing*, for appellee, cited: 51 Tex., 159; 15 Tex., 516; 16 Tex., 172; 6 Tex., 303.

STAYTON, ASSOCIATE JUSTICE.— If the facts alleged in the petition are true, and they are so to be taken on demurrer, the property in controversy became the homestead of Ben Morris and the appellant, subject only to the payment of the balance of the purchase money.

Such being true, Ben Morris had no power, unless joined by his wife, directly or indirectly, to alienate it, unless the same was done in good faith in settlement of the lien on the property for the balance of the purchase money.

The power of a husband, without being joined by his wife, in good faith, to adjust equities existing prior to the complete investiture of homestead rights, has been recognized in many cases. Farmer v. Simpson, 6 Tex., 304; Meyer v. Claus, 15 Tex., 518; White v. Shepperd, 16 Tex., 163; Clements v. Lacy, 51 Tex., 160; Gillum v. Collier and Richardson, 53 Tex., 593; Hicks v. Morris, 57 Tex., 662.; De Bruhl v. Maas, 54 Tex., 474.

This is a power, however, which must be exercised in good faith, and if it appears that the act of the husband in this respect be in bad faith, and with a view to do indirectly what he could not do directly, and this for the purpose of fraudulently depriving the wife of her homestead right, then, at least as to all persons who have notice of the husband's evil design, the husband's act can be of no avail. 16 Tex., 172; 51 Tex., 160.

The petition in this cause renders it reasonably certain (and we must now take all of its averments to be true) that all of the appellees combined to illegally deprive the appellant of her homestead claim or right.

The greater part of the purchase money had been paid, the vendor of the land had transferred the note for balance of the purchase money, upon which only about $40 remained due, to another person, who was not demanding payment, and with whom the appellant

had made satisfactory arrangements to pay this balance in monthly instalments.

F. & A. Geisecke were advised of the unwillingness of the appellant to the disposition of the property which the husband was seeking to make; they knew her rights therein, and yet, in the face of her protest, insisted upon consummating a contract, through the husband, by which the rights of the wife were to be destroyed; insisted upon paying money to the husband for the property, under circumstances which indicated to them that it was the intention of the husband to squander the little property which seems to have been acquired by the labor of the appellant, and thus defraud her.

If it be conceived that the simple fact that a homestead has not been fully paid for deprives it of the homestead character and protection as against any person other than one holding a lien acquired prior to the time the property becomes the home, then such conception finds nothing in reason nor in the decisions of this court to rest on.   Woolfolk v. Rickets, 41 Tex., 361.

The petition states a good cause of action, and the demurrer should have been overruled and an inquiry made into the facts pleaded by the respective parties; and for the error of the court below in sustaining the demurrer the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 25, 1884.]