## REYNOLDS MORTGAGE CO. et al. v. GAMBILL. (No. 3074.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 8, 1925. Rehearing Denied Oct. 8, 1925.)

**1. Homestead ⟲�m➛117—Sale of homestead invalid, where wife's insanity prevented her consent.**

Sale of homestead, by husband and wife under Const. art. 16, § 50, and Rev. St. art. 1115, requiring consent of the wife, cannot bᴄ sustained, where the wife's insanity at the time prevented her from giving consent.

**2. Homestead ⟲➛117—Constitutional provision requiring consent of wife to sale of homestead is mandatory.**

Const. art. 16, § 50, prohibiting sale of homestead without consent of wife is mandatory, and imposes a limitation on power of sale during existence of relationship of husband and wife to be strictly complied with under rule that, where power of sale is conferred on two or more and dependent on their judgment, concurrence of all is necessary.

**3. Homestead ⟲➛117—Constitutional provision requiring consent of wife to sale of homestead not conditional on her continued mental capacity.**

Constitutional provision requiring consent of wife to sale of a homestead is not conditional on continued mental capacity of the wife, under rule that courts will not extend limits of constitutional provision or attempt a condition or exception not within its terms so as to relieve against its occasional harsh operation.

**4. Homestead ⟲➛110—Equity will not relieve from limitation on husband of power of sale of homestead in absence of duty to sell.**

Court of equity will not grant relief from limitation on husband of power of sale of homestead imposed by law, in absence of incumbrances obligating husband to sell.

Hodges, J., dissenting.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Suit by Levi Gambill, next friend of J. M. Gambill and another, against the Reynolds Mortgage Company and others, to cancel a deed. From a judgment for plaintiff, defendants appeal. Affirmed.

Samuels & Brown, of Fort Worth, and Clark & Clark and L. L. Bowman, all of Greenville, for appellants.

W. B. Chauncy, of Wichita Falls, L. D. Estes, of Commerce, and Neyland & Neyland, of Greenville, for appellee.

LEVY, J. [1] As concluded by the majority of the court, the judgment should be affirmed upon the grounds that, since Mrs. Gambill was insane at the time she joined in the conveyance of the homestead, her signature and acknowledgment did not evidence "consent" such as the law recognizes as valid and binding upon her, and therefore "the sale" of the homestead in this case cannot be sustained as being made in accordance with the constitutional provision and the statute. It is not questioned that, as the legal effect attaching to insanity, when the power of volition and mental capacity to either consent or dissent is gone, then the act is without consent such as the law recognizes. By the law of the land no insane person is capable of assenting to a sale of land so as to bind himself. And that, being the effect of the wife's act, it follows as a consequence that the sale in this case cannot be sustained, even though the property was community property and the husband signed the deed. For the law requires "the homestead," whether it be community or separate property, to be alienated by both the husband and the wife in accord in the sale, and the husband is not legally empowered to alienate it independently of the wife in virtue merely of her insanity.

[2] The real question involved is purely one of legal authority of the husband himself to alienate the homestead in the precise circumstances shown. The constitutional provision in question inhibits, in plain positive words, the sale of "the homestead" by the husband "without the consent of the wife." It is mandatory and imperative in its nature. There must be mutual assent of the husband and wife in the alienation of the homestead. Clearly the primary effect of the provision is to counteract and to afford relief against the unrestricted right of the husband alone to alienate "the homestead" so long as it is the homestead of the husband and wife. As clearly, equality of rights is thus given to husband and wife jointly to be exercised in agreement freely made. And the consent of the wife being expressly required to the execution of the power of sale of the particular homestead, it constitutes, in legal effect, a limitation upon the power of alienation by sale, which, like every other condition, must be strictly complied with. The power to act is conferred on the two, the husband and the wife, and its exercise is made absolutely dependent on their judgment whether such act shall be done. The term and duration of the power to act is limited by its words to the extent of the period of time that the premises are used and occupied as a "homestead" during the relation of husband and wife. It is a general rule of law that, where the power to act is conferred on two or more, and it is dependent on their judgment whether such act shall be done, the concurrence of all is necessary to a valid exercise of the power. Hart v. Rust, 46 Tex. 556; Giddings v. Butler, 47 Tex. 535; Wright v. Dunn, 73 Tex. 293, 11 S. W. 330; Morris v. Geisecke, 60 Tex. 633.

[3] That rule is especially applicable where

the law, and not the simple contract of the parties, creates the authority to give reciprocal consent and make such mutual consent a condition to the valid exercise of the power of sale. Then upon what legal ground can a judicial decision rest, sustaining the validity of a sale of the homestead, when it is such, by the husband alone, the relation of husband and wife still existing? Obviously the authority of the husband to do so must be referable to some provision of the law. No condition is annexed to the right of the wife to give consent by the terms of the constitutional provision. The provision confers upon the wife the absolute right of "consent" to the alienation of the homestead, and such right is not given conditionally upon the happening or not happening of a certain event. It does not provide that in case of legal incapacity thereafter arising in the particular case the right of mutual consent should terminate or cease. Neither is the restriction upon the authority of the husband to sell the homestead only through the concurrence of himself and wife made dependent upon the continuance of the mental capacity of the wife. And there is a marked legal difference between the continuance of mental capacity as affording ground for the valid exercise of the right of consent and the lack of mental capacity as ground for legally terminating and ceasing the right itself conferred by law. It is fundamental that it is not the proper office or authority of the courts to extend the limits of a constitutional provision or attempt a condition or exception not within its terms to relieve against the occasionally harsh operation of its terms. That is purely the province of the lawmakers themselves. Therefore the question must depend upon whether or not, independent of the constitutional provision, insanity of the wife, as a pure judicial question, operates to vest in the husband the exclusive power to alienate the homestead during the period of her mental disability.

[4] Equity will not interfere to give relief, but will remain passive, where by express law there is a limitation upon the power of alienation of the homestead, and the final relief sought, as here, is merely to relieve such limitation. The property itself is not affected by any liens, charges, pecuniary benefits, or like circumstances, resting an obligation upon the husband to exercise the immediate power of sale—a right which equity recognizes and to a certain extent protects. Morris v. Geisecke, 60 Tex. 633. The same legal effect does not attach to insanity as to death or divorce. The power of consent being given only in the capacity of "wife," the death or divorce of the wife legally severs the relation of husband and wife, and consequently terminates and ends the right given. Intentional abandonment on the part of the wife legally operates as an abandonment and severance of the relation of husband and

wife as well as the use and occupation of the premises as a homestead, both essential elements constituting a homestead. But insanity does not ipso facto legally operate or have the effect to terminate or revoke either the relation of husband and wife, or the right itself of reciprocal consent to the alienation of the homestead. The law, and not any act of the wife, created the right of reciprocal consent, and requires its exercise to a valid sale. It does not depend upon the continuance of her mental capacity. The wife's rights are merely passive, and not vigorously active, during the period of insanity.

It is upon the ground alone that the wife's rights are merely passive, and do not cease to exist, during the period of insanity, that the courts avoid, and no further, the act done during the period of insanity. It does not legally effectuate an abandonment of the homestead, especially so when the wife, as here, is actually occupying the home. In her helpless and pitiable condition the wife has as much need, and even more so, for the use and occupancy of the homestead, as a sheltering place, as when in normal mind. The duty of the husband toward her in this respect is not lessened. And insanity is not classed as civil death, depriving of legal privileges, as for crime committed or fault upon her part. Railway Co. v. Bailey, 83 Tex. 19, 18 S. W. 481. That cannot be the province of the courts in a free country to forfeit personal rights pertaining to property merely for insanity. Hence as long as the personal right granted to the wife does not legally cease, it cannot legally exist anywhere else, even in the husband as the joint owner. And, in order for the husband to be vested with sole authority, the right of the wife to do the special act must legally cease, and not be merely passive. Consequently the constitutional restraint upon the husband's authority to alienate the homestead is not relieved, as a judicial question, merely upon the insanity of the wife, authorizing him to sell the homestead independently of the reciprocal consent of the wife. Thompson v. Mortgage Security Co., 110 Ala. 400, 18 So. 315, 55 Am. St. Rep. 29; Weatherington v. Smith, 77 Neb. 363, 109 N. W. 381, 13 L. R. A. (N. S.) 430, 124 Am. St. Rep. 855. The rule is squarely laid down in utmost consistency of principle, that insanity, unlike "absence or civil death," does not empower either spouse to alone act in the alienation of "the homestead" "which the law requires to be made by both the husband and wife." Heidenheimer v. Thomas, 63 Tex. 287; Priddy v. Tabor (Tex. Civ. App.) 189 S. W. 111. In the Heidenheimer Case the wife undertook to convey the homestead, and in the Priddy Case the husband undertook to convey the homestead. No valid reason can exist why the same rule should not be applied to the husband as to the wife. There is equality of rights in the husband and wife in

276 S.W.—31

respect to the use and occupancy of the home, and in the special act of its alienation. The right of the wife is of as much legal dignity as that of the husband. Her cares and responsibilities, in case of insanity of the husband, are as great as are those of the husband in case of insanity of the wife.

It is quite true, as argued in the main opinion, that in conferring the right upon the wife to give consent to the sale of the homestead it was supposed that she was sane, and not insane, and that she would not exercise the right during the period of legal incapacity to give valid consent. That, though, is the presumption of the courts as affording ground for avoidance merely of the act done by her during that period of mental incapacity. The courts have never made insanity a ground for divestiture of a personal right pertaining to property, in order to confer the sole power upon another to act, the concurrence of the two being expressly required by law to do the given act.

As stated, we think the judgment should be affirmed.

HODGES, J. (dissenting). This suit was filed by Levi Gambill as next friend for his father and mother, J. M. Gambill and Ellen Gambill, to cancel a deed. The facts show that on May 9, 1919, J. M. Gambill and wife conveyed to their son D. W. Gambill a tract of 50 acres of land, which they were then occupying as their homestead. The deed recited a consideration of $3,500 paid in cash and a note for $1,500, payable 60 days after date to J. M. Gambill, and secured by a vendor's lien on the land conveyed. This note was subsequently transferred to the Reynolds Mortgage Company, and some time later a renewal note was executed by D. W. Gambill, payable to the Reynolds Mortgage Company and secured by a deed of trust on the land. Thereafter the Reynolds' Mortgage Company assigned the note and lien to the Pan-American Life Insurance Company. Upon the failure of D. W. Gambill to pay some of the interest notes at maturity, the land was advertised and sold to A. E. Edwards. On May 21, 1920, prior to the foreclosure sale, D. W. Gambill, joined by his wife, reconveyed the land to J. M. Gambill and wife. The deed last mentioned recited a cash consideration of $3,500 and the assumption of the outstanding indebtedness theretofore assigned to the Reynolds Mortgage Company. The plaintiff below alleged, as a ground for canceling the conveyance, that both J. M. Gambill and his wife were insane at the time they executed the deed to D. W. Gambill, and have been insane continuously since then; that the land conveyed was and had been their homestead for many years; that no money was ever paid to them by D. W. Gambill, or by the Reynolds Mortgage Company, upon any of the transactions mentioned.

The Reynolds Mortgage Company answered by general and special exceptions and general and special denial, in which it set forth in detail the various transactions, alleging that, if the mind of either J. M. Gambill or Ellen Gambill was unsound, defendant knew nothing of the fact; that it was an innocent purchaser for value of the note and lien above mentioned; that the proceeds of the same had been invested in other land for the benefit of J. M. Gambill; and that in no event should the transactions complained of be set aside. The Pan-American Life Insurance Company answered, alleging, among other things, that it had purchased the $1,500 note secured by a deed of trust in favor of the Reynolds Mortgage Company before maturity and for a valuable consideration. Edwards answered by general and special exceptions and general and special denial, and adopted the answers of his codefendant the Reynolds Mortgage Company.

In response to special issues, the jury found that Mrs. Ellen Gambill was of unsound mind at the time the conveyance was made to D. W. Gambill, but that J. M. Gambill was of sound mind at the time he made the different transfers with which he was connected. It is conceded, however, that Mrs. Gambill had never been judicially decreed insane. They also found that the land conveyed was the homestead of J. M. Gambill and wife. Upon those findings a judgment was entered in favor of the plaintiff below, canceling the conveyance and restoring the title of the property to J. M. Gambill and wife.

The principal question presented in this appeal is, Can the husband alone, when the wife is insane, convey the community homestead? A majority of the members of this court are of the opinion that, so long as the relationship of husband and wife continues, even though the wife be permanently insane, the husband has no power to convey the homestead by his deed alone. They conclude that, since Mrs. Gambill was insane at the time she joined in the conveyance of the property in controversy, her signature and acknowledgment did not evidence a legal consent, and the deed to D. W. Gambill was a nullity. That conclusion calls for an affirmance of the judgment of the trial court, and an order to that effect will be entered. But for reasons hereinafter stated the writer does not agree to that conclusion.

Section 50 of article 16 of the Constitution contains the following:

"The homestead of a family shall be, and is hereby, protected from forced sale, for the payment of all debts, except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall

the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law."

Article 1115 of the Revised Civil Statutes is as follows:

"The homestead of the family shall not be sold and conveyed by the owner, if a married man, without the consent of the wife. Such consent shall be evidenced by the wife joining in the conveyance, and signing her name thereto, and by her separate acknowledgment thereof taken and certified to before the proper officer, and in the mode pointed out in articles 6802 and 6805."

Article 3594 provides:

"Where the wife dies or becomes insane, leaving a surviving husband and child, or children, the husband shall have the exclusive management, control and disposition of the community property in the same manner as during her lifetime, or sanity; and it shall not be necessary that the insane wife shall join in conveyances of such property, or her privy examination and acknowledgment be taken to such conveyances, subject, however, to the provisions of this chapter." (The chapter referred to is one providing for the community administration.)

Article 4621 (Vernon's Ann. Civ. St. Supp. 1918) contains this provision:

"The homestead, whether the separate property of the husband or wife, or the community property of both, shall not be disposed of except by the joint conveyance of both the husband and the wife, except where the husband has permanently abandoned the wife, or is insane, in which instances the wife may sell and make title to any such homestead, if her separate property, in the manner herein provided for conveying or making title to her other separate estate."

Article 4622 (Vernon's Sayles' Ann. Civ. St. 1914) provides:

"All property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only, provided, however," etc. (Then follow some exceptions to the right of the husband to control and manage community property which are not necessary to here consider.)

When construing the provisions quoted, it must be borne in mind that in the absence of some constitutional or statutory restraints the husband alone would have the legal right to convey the family homestead when situated on his separate property or on property belonging to the community. That fact doubtless accounts for the language of the Constitution and of article 1115 of the statute, which expressly requires the consent of the wife, without referring to the concurrence of the husband. Those provisions must be regarded as merely limitations upon the existing legal power of the husband to dispose of the homestead when not located on the separate property of the wife. Neither the Constitution nor the statute undertakes to invest the wife with a title to homestead property which she could not otherwise claim. It was evidently intended to give her only a veto power, to be exercised by withholding her consent from sale of the homestead which she did not approve. It cannot reasonably be said that the Legislature or the framers of the Constitution intended to discourage or obstruct the alienation of the family home, for it may be, and often is, to the interest of the family that this be sold.

No rule of construction is better established than that which requires the consideration of the purposes for which a law is enacted, and the conditions to which it is designed to apply. Since sanity is the normal status of mankind and the prevailing condition among both men and women, and insanity is a comparatively rare exception, it must be assumed that both the Constitution and the statute were intended to apply to transactions in which sane married women were concerned. An insane person is, in many respects, civilly dead. While the insane may hold property rights and be entitled to personal protection afforded by the law of the land, they have no power to make or assent to contracts, or to manage and control property. When the common-law right of the husband to dispose of his own or the community property was made subject to the approval of the wife, it is only reasonable to assume that the lawmakers had in mind a wife who was sui juris and who could give or withhold an intelligent approval. The requirement that her consent be obtained carries with it the implication that she has capacity to give a legal consent. It would be a useless thing to confer upon the wife a privilege which she could not, for want of capacity, exercise. If the assent of the wife is, under all circumstances, an indispensable requirement to a valid sale of the homestead, then her insanity has the legal effect of suspending the possibility of disposing of the homestead during her mental disability. This veto power conferred upon the wife is not a property right, but a personal privilege which she alone can exercise in the manner pointed out by the statute. When she becomes insane and loses the power to exercise the privilege, common reason demands that the privilege should cease or be suspended during her disability. A guardian of her estate cannot exercise that privilege for her, because he can only manage her property. A guardian of her person cannot exercise it, because he has no power to represent the ward in the making of contracts. When the only reason for conferring the power disappears, the power itself disappears because a condition arises to which the law can have no reasonable application.

In construing a law where the intent is doubtful, some assistance may be found in considering the practical consequences to which a literal construction would lead; for we must assume that, in the making of a law, the intent is to promote the welfare of those to whom the law was made applicable. By making the alienation of the homestead impossible during the insanity of the wife the husband would, in many instances, be deprived of the power to dispose of that which was his own separate property and in which his wife holds no legal estate, as well as that to which he holds the legal title and has the right to manage and control; for it must be borne in mind that the consent of the wife is required as much where the homestead is situated on the separate property of the husband as when situated on her own separate property or that belonging to the community. When she becomes insane she not only loses the capacity to confer with the husband and aid him by her counsel and labor in providing for the family welfare, but frequently becomes a burden on his hands, entailing more care and greater expense. The law holds him responsible for that increased care and expense, while his power to use his own property for that purpose, if needed, is taken away if the construction of the law adopted by the majority be correct. There can be no reason for thus tying the hands of the husband except one which assumes that he is inimical to the wife's true interest and cannot be trusted to do for that which she cannot, in her insane condition, do for herself. It is doubtless true that there are husbands who deserve to be thus restrained, but they are the exception and not the rule. The underlying principles of civilized society and the great body of modern laws made to establish and govern the marriage relation are not founded upon such distrust of marital fidelity on the part of the husband. The marriage contract creates the most intimate of all legal relations. In its consummation the wife, for reasons which the law deems wise, surrenders to the husband a part of her legal identity. He must consent to the sale of her separate property and join in its conveyance. He is made legally, as well as morally, responsible for her support, without reference to her ability to provide for herself out of her own means. Upon his loyalty and fidelity she must depend for that domestic peace and harmony which is the real end sought in the formation of the marriage relation. It would seem that one upon whom the law imposes such grave responsibilities, and to whom society looks for the exercise of the tenderest care and most delicate consideration, should not, in the days of the wife's affliction, be handicapped with unreasonable restrictions.

If the personal privilege to control the sale of homestead property continues after insanity, evidently the law lodges that privilege somewhere during the wife's insanity. If it is not in the husband, then where can it be found? To me it is not satisfactory to say that the husband of an insane wife can, by an abandonment of the homestead, indirectly acquire the right to sell and convey it. Such a course contemplates an undisguised and intentional evasion of the plain provision of the law. If it is a violation of the letter of the law for the husband to sell the homestead while the wife is insane, it would be no less a violation of the spirit of the law for him to resort to a subterfuge in order to evade a legal restriction imposed for the wife's benefit. The legal presumption that the wife is the best judge of what is for her own good continues only so long as the wife has the capacity to exercise a rational judgment.

There are two cases decided by the Courts of Civil Appeals which hold that the requirement of the wife's consent to the sale of the homestead does not apply when she becomes insane. The first of these cases is Shields v. Aultman, Miller & Co., 20 Tex. Civ. App. 345, 50 S. W. 219, decided by the Court of Civil Appeals at Dallas; Chief Justice Finley, who rendered the opinion, held, in effect, that, when the personal consent of the wife was rendered impossible by her insanity, the husband might lawfully dispose of the homestead situated upon community property. While saying that this was decisive of that appeal, the court further held that the judgment should be affirmed upon the ground that after the homestead had been sold the husband abandoned the property. That case was followed and approved in Gilley v. Troop, 146 S. W. 954. It also appears from the record that in this latter case there were other grounds upon which the appeal might have been disposed of in the same way. In both of those cases the Supreme Court refused writs of error.

In Priddy v. Tabor, 189 S. W. 111, the Court of Civil Appeals of the Second District declined to follow the construction adopted in those two cases. The Supreme Court granted a writ of error in the last-mentioned case because in conflict with Shields v. Aultman, Miller & Co. and Gilley v. Troop. For some reason, which does not appear of record, the appeal was withdrawn from the Supreme Court, and no final decision was ever rendered.

In my judgment the trial court erred in holding that J. M. Gambill, the husband of an insane wife, had no power to convey the community homestead during disability, and for that reason the judgment should be reversed and here rendered for appellants. But, in obedience to the conclusion of the majority of this court, the judgment will be affirmed.