47 535<br/>91 245

### J. D. & D. C. GIDDINGS *v.* GEORGE BUTLER ET AL.

1. EXECUTION OF POWER—EXECUTORS.—A power committed to two or more persons, unless it otherwise appear from the instrument by which it is delegated, is properly executed only by the joint act of all, or of all who have accepted the trust.

2. SAME—EQUITY—SPECIFIC PERFORMANCE.—When a trust is executed by one of several joint executors, with the consent and approbation of the others, or when the others subsequently ratify a sale

made by one under the trust, the act of the single executor will be regarded in equity as binding upon the estate.

3. SAME.—A deed made by one of several executors, authorized by will to act independent of the control of the Probate Courts, if authorized by the co-executors, and approved by them when made, is merely an irregular and imperfect execution of the power, which will be aided in equity.

4. SAME—ESTOPPEL.—Courts of equity may enforce specific performance of a parol sale of land, or hold executors and trustees bound by acts of estoppel, where their power is unshackled and coupled with an interest.

5. EXECUTION OF POWER.—The exceptions recognized above are as well settled as-the rule that a joint power must be executed by the joint act of the trustees or executors.

APPEAL from McLennan. Tried below before the Hon. J. H. Banton.

*S. H. Renick* and *Herring & Anderson,* for appellants, cited Alexander *v.* Maverick, 18 Tex., 194; Tucker *v.* Harris, 13 Ga., 1; 1 Const. of Texas, art. 14, sec. 15; Paschal's Dig., art. 58; Paschal's Dig., art. 1226; Const. of Texas of 1866; Paschal's Dig., p. 936; Paschal's Dig., arts. 1294, 1295, 1297, 1380, 1389.; 1393; Perry on Trusts, 273, 493, 499; Sugd. on Powers, 144; Berger *v.* Duff, 4 Johns. Ch., 368; Hawkins *v.* Kemp, 3 East., 410; Wright *v.* Wakeford, 17 Ves., 454; 1 Sugd. on Powers, 240, 262; 2 Kinne's La. Compend., 494; Ingram *v.* Ingram, 2 Atk., 88; Alexander *v.* Alexander, 2 Ves. Sr., 640; Attorney General *v.* Scott, 1 Ves., 413; Pearson *v.* Jameson, 1 McLean, 199; 1 Sugd. on Powers, 214, 216; 2 Sugd. on Powers, 72, 73; Perry on Trusts, 287, 408, 411, 493; Hill on Trustees, 474; Mortlock *v.* Butler, 10 Ves., 311; Sinclair *v.* Jackson, 8 Cowen, 582; 1 Sugd. on Powers, 319, 323, 326; Bateman *v.* Davis, 3 Madd., 98; Graham *v.* Gibbon, 25 Com. L. R., 175; 1 Story on Eq., secs. 175, 276; 1 Sugd. on Vend., 152, note 1; Perry on Trusts, sec. 493; Lancashire *v.* Lancashire, 2 Phil., 664; Selden *v.* Vermilya, 3 Comst., 525; Suarez *v.* Pumpelly, 2 2 Sand. Ch., 336; Wilson *v.* Towles, 36 N. H., 129; Perry

on Trusts, secs. 402, 408; Crewe *v.* Dicken, 4 Ves., 97; Hamilton *v.* Royse, 2 Sch. & Lef., 330.

*Flint & Graham,* for appellees, cited 4 Kent, 326; Hill on Trustees, 472, 489; 1 Sugd. on Pow., 150, 152; Tiff & Ballard's Trustees, 375; *In re* Van Wyck, 1 Barb. Ch., 569; McDonough *v.* Cross, 40 Tex., 251; 1 Sugd. on Pow., 247, 248, 276; 1 Sugd. on Pow., 116; Crosby *v.* Huston, 1 Tex., 226; Newton *v.* Bronson, 3 Kern, 593; Silverthorn *v.* McKinster, 12 Penn. St. R., 67; Taylor *v.* Adams, 2 Serg. & R., 534; Roberts's Widow *v.* Stanton, 2 Mumford, 139; Thorp *v.* McCullum, 1 Gillman, (Ill.,) 628; Barr *v.* Hatch, 3 Ohio., 527; Nelson *v.* Carrington, 4 Mumf., 332; Sinclair *v.* Jackson, 8 Cowen, 543; Rogers *v.* Frost, 14 Tex., 269; Rogers *v.* Bracken, 15 Tex., 567; 2 Sugd. on Pow., 93, 103, 118, 119; 1 Sch. & Lef., 62; 1 Story's Eq., secs. 165–174; Kerr on Frauds and Mistakes, 438–446; Hawley *v.* James, 5 Paige, 487; 1 Sugd. on Pow., 215; Hill on Trustees, 474; Story on Agency, 255–258; Yerby *v.* Grigsby, 9 Leigh, 387; Champlin *v.* Parish, 11 Paige, 411; Lawrence *v.* Taylor, 5 Hill, 111; Wilkinson *v.* Leland, 2 Peters, 660; 1 Parsons on Cont., 46; Reese *v.* Medlock, 27 Tex., 124; Herm. on Est., 235, 258, 263, 410, 412, 418, 421, 435; Big. on Est., 584, 585; Thomas *v.* Brooks, 6 Tex., 369; Thomas *v.* Greer, 6 Tex., 372; Allen *v.* Stephanes, 18 Tex., 672; Baker *v.* Clepper, 26 Tex., 634; Riddle *v.* Bush, 27 Tex., 677; Kerr on Frauds and Mistakes, 400, 401; Love *v.* Sierra Nevada Mining Co., 32 Cal., 653; Reynolds *v.* Johnston, 13 Tex., 214; Neatherly *v.* Ripley, 21 Tex., 436; Eliott *v.* Whitaker, 30 Tex., 417; 2 Story's Eq., 761, 763; Hunt *v.* Turner, 9 Tex., 385; Hill on Trustees, 477; 1 Law Cas. in Eq., 45, 136; Henry *v.* Raiman, 1 Casey, 356; Galbraith *v.* Elder, 8 Watts, 81; Reid *v.* Stanley, 6 Watts & Serg., 369; Schneider *v.* McFarland, 4 Barb. S. C., 142; 4 Bacon's Abr., 63; Conklin *v.* Egerton, 21 Wend., 449; Stone *v.* Dorsett, 18 Tex., 709; Taylor *v.* Benham, 5 How., 271; 1 Williams on Exr., 527.

*James C. Walker*, also for appellees, cited Hill on Trustees, 717; Langley *v.* Harris, 23 Tex., 569; Tippett *v.* Mize, 30 Tex., 366; Ansley *v.* Baker, 14 Tex., 607; Paschal's Dig., arts. 1297, 5740; 2 Williams on Exr., 814; Roseboom *v.* Mosher, 2 Denio, 69; Co. Litt., 113, *a;* 4 Kent, 325; 14 Johns., 553; 10 Peters, 523; Parsons on Cont., 45, 46; Barziza *v.* Story, 39 Tex., 354; Jackson *v.* Caldwell. 1 Cow., 622; Moreland *v.* Atchison, 19 Tex., 303; De Witt *v.* Miller, 9 Tex., 247; Bertrand *v.* Bingham, 13 Tex., 267; Grooms *v.* Rust, 27 Tex., 231; Latham *v.* Selkirk, 11 Tex., 320; Webb *v.* Mallard, 27 Tex., 84; Hogue *v.* Sims, 9 Tex., 546; Conkrite *v.* Hart, 10 Tex., 140; Emmons *v.* Williams, 28 Tex., 776; Green *v.* Rugely, 23 Tex., 543; Robertson *v.* Paul, 16 Tex., 474; Boggess *v.* Lilly, 18 Tex., 200; Chandler *v.* Burdett, 20 Tex., 42; Cunningham *v.* Taylor, 20 Tex., 126; Carroll *v.* Carroll, 20 Tex., 746; Wood *v.* McMeans, 23 Tex., 485; McMiller *v.* Butler, 20 Tex., 405; Hatchet *v.* Conner, 30 Tex., 104; Rorer on Jud. Sales, sec. 581; Brasfield *v.* Whitaker, 4 Hawks., 309; Bryan *v.* Bridge, 6 Tex., 141; Portis *v.* Parker, 8 Tex., 25; Brown *v.* Lane, 19 Tex., 205; Leland *v.* Wilson, 34 Tex., 79; James *v.* Fulcrod, 5 Tex., 515; Mead *v.* Randolph, 8 Tex., 198; Watkins *v.* Gilkerson, 10 Tex., 340; Stuart *v.* Baker, 17 Tex., 417; Doggett *v.* Patterson, 18 Tex., 158; Leakey *v.* Gunter, 25 Tex., 400; Hill on Trustees, 697; Sugd. on Vend., sec. 39; 2 Sugd. on Pow., 511; Lewis *v.* Baird, 3 McLean, 57; Zounts *v.* Courcelle, 16 La. Ann., 96; Ponder *v.* Mosely, 2 Fla., 267; Swenson *v.* Walker, 3 Tex., 93; Howard *v.* Battle, 18 Tex., 673; The State *v.* Stanley, 14 Ind., 409; Kerr on Fraud and Mis., 438, 446; Chapman *v.* Gibson, 3 Bro. Ch., 229; 1 Fonb. Eq., book 1, ch. 1, sec. 7; 1 Story's Eq., secs. 165, 166, 172, 173; Sugd. on Pow., 369; 2 Chance on Pow., 507, 510; Wade *v.* Paget, 1 Bro. Ch., 363; 2 Wash. on Real Prop., 629; Jeremy Eq., 376; Brown *r.* Higgs, 8 Ves., 570; Holmes *v.* Coghill, 7 Ves., 499; Moodie *v.* Reid, 1 Madd., 516; Taylor *v.* Beech, 1 Ves. Jr., 287; 1 Ves., 221, 297; 7

Ves., 508; 1 Sugd. on Vend., 160; McKown v. Stockdale, 1 Nott & McCord, 41; Muldrow v. Fox, 2 Dana, 76; Younger v. Givens, 7 Dana, 1; 4 Johns. Ch., 367; 1 Am. Lead. Cases, 574; Parsons on Cont., 478; Clay v. Clay, 35 Tex., 529; Wilkinson v. Leland, 2 Peters, 661; Means v. Robinson, 7 Tex., 514; Warden v. Richards, 11 Gray, 277.

*S. H. Renick* and *Herring & Anderson*, for appellant, in reply, argued—

1. The deed of T. C. Hood to the Waco Manufacturing Company is void. (Downing v. Rugar, 21 Wend., 178; Sinclair v. Jackson, 8 Cow., 582; Green v. Miller, 6 Johns., 39; Franklin v. Osgood, 14 Johns., 560; 1 Caine's Cases in Error, 16; Tolers on ·Ex., 364, note; Zebach v. Smith, 3 Binn., 69; Jenkins v. Stouffer, 3 Yeates, 103; Digges's Lessees v. Jarman, 4 Har. & McHen., 483–5; 3 Bibb, 351; 3 A. K. Marshall, 1207; 2 Littell, 115; 4 Dana, 418; 4 Dana, 8; 3 J. J. Marshall, 248; 2 Dana, 75–79; 3 Id., 195.)

2. T. C. Hood's co-executors could not delegate their power to him. *Delegatus non potest delegare.* (Ingram v. Ingram, 2 Atk., 88; Hamilton v. Royse, 2 Sch. & Lef., 330; Alexander v. Alexander, 2 Ves. Sr., 640; Bristow v. Warde, 2 Ves. Jr., 336; Hawkins v. Kemp, 3 East., 410; Attorney General v. Scott, 1 Ves. Jr., 413; Berger v. Duff, 4 Johns. Ch., 368; 8 Cow., 582; 1 Sugden on Powers, 214–216.)

3. In the small number of cases in which power may be delegated to perform mere ministerial acts, the authority must clearly appear in writing. (Hill on Trusts, 540; Id., 474; Sinclair v. Jackson, 8 Cow., 582; Mortlock v. Butler, 10 Ves. Jr., 311.) A parol appointment will not be sufficient. The authority must be in writing, and strictly limited. (Sinclair v. Jackson, 8 Cow., 581.)

4. This is not such a defective execution as can be aided in equity. (Story's Eq., sec. 175.) As to two of the executors, it is by parol, and such execution cannot be aided. (2 Sugden on Powers, 121.)

5. Appellee does not belong to the class who will be aided, not being a *bona fide* purchaser, nor having paid any part of the purchase-money. A purchaser, in order to secure the favor of a court of equity, must be a *bona fide* purchaser for value, and have paid the purchase-money.

6. The pretended ratification of Mary M. Hood does not make T. C. Hood's deed good. It is the several execution of a joint power, which is not good. (1 Sugden on Powers, 320–324.)

And it lacks the concurrence of the third executor. Both instruments being defective, they do not together amount to a valid execution of the power. (1 Sugden, 276, 277.)

The case cited from 1 Texas, as to the several execution of a joint power was decided at an early day, when books were scarce, and, we respectfully submit, is against all the authorities, and can only be supported upon the peculiar circumstances of the case.

MOORE, ASSOCIATE JUSTICE.—It is conceded by appellants, as well as appellees, that the land which is the subject-matter of controversy in this suit was the property of Henry M. Hood, sr., at the time of his death; and that said Hood died in Washington county, Texas, in the month of January, 1865, leaving a will, in which he appointed T. C. Hood, his son, Mary M. Hood, his wife, and A. B. Stone, his son-in-law, his executors; that by his will, said Hood directed that no action should be had in the Probate Court in the settlement of his estate, except the probating of his will, and the return and record of an inventory of his property; that said will was filed, and, at the February Term, 1865, of the County Court of Washington county, was duly and properly admitted to probate, and on the same day all three of the parties nominated as executors in the will appeared before the court and took the oath prescribed by the statute, and entered upon the discharge of their duties as such executors. It is also conceded that the executors were authorized by the will to

sell the land in controversy, for the purpose of paying the debts of the testator. And appellees maintain, that in exercise of the power thus conferred, said T. C. Hood, with the consent of his executors, as shown on the face of the deed, (and as otherwise proved on the trial,) on the first day of April, 1865, sold and conveyed the land in controversy to the Waco Manufacturing Company, for $30 per acre, and for which said company executed its three promissory notes, payable to the executors of said Henry M. Hood, deceased, at one, two, and three years, respectively, from date, with vendors' lien upon the land, as security for their payment; and said Waco Manufacturing Company, on said sale being thus consummated, by the execution of said deed and notes, was placed in possession of the land, and shortly thereafter laid out and expended a large amount of money in erecting build-. ings thereon, and making other expensive and valuable improvements; and for these and other purposes connected with its business, said company, on the 28th of February, 1866, borrowed a large sum of money from the appellee Butler, to secure the payment of which, said company at the time executed a deed of trust upon said land to T. C. Tucker, trustee. But said company failing to pay said Butler the money borrowed of him, as it undertook and bound itself to do, said property was, on the 6th of April, 1869, regularly and duly sold by the trustee Tucker, under and in pursuance of the power and authority conferred upon and vested in him by said trust deed, and that it was purchased by Butler, who gave for it full and reasonable value; and immediately thereafter said Butler, under whom the other appellees claim, was let into possession thereof by said Waco Manufacturing Company, and has had quiet and undisturbed possession of it until the levy of the execution hereinafter mentioned.

Appellees also claim, and it cannot be denied, that there is evidence in the record tending to support the assumption that while the deed to the Waco Manufacturing Company was executed by only one of the executors, the sale was

made by him with the consent and approval of his co-executors, and under the belief, induced by the advice of appellants as their attorneys, that the deed by one executor was just as valid and effectual as if executed by all of them; and that T. C. Hood, after the sale of the land, with their consent and approval, and after they were fully informed and advised of such sale, and all the facts and circumstances connected therewith, ratified, confirmed, and approved it, and appropriated and used the notes given for said land by the Waco Manufacturing Company, in payment of the debts of their testator; and that said Stone, after acting as executor about one year, tendered his resignation to the Probate Court of Washington county, and that said court, on the 3d of April, 1866, accepted his resignation, and discharged him from said trust, since which time he has not acted as an executor of said estate, nor had any connection whatever therewith. And that after the resignation of Stone, and while said T. C. Hood and Mary M. Hood, as executors as aforesaid, had the exclusive management and control of said estate, and all the business connected therewith, said Mary M. Hood, on or about the first day of August, 1868, executed to said Waco Manufacturing Company a deed ratifying and confirming said deed of April 1st, 1865, made to said company by her co-executor, T. C. Hood. Appellees also maintain that the sale of the land to said company had not only been approved and confirmed by the executors, but, since their removal, it has also been acquiesced in by the administrators, with the will annexed, appointed by the Probate Court to complete the settlement of said estate, and that neither the administrators nor heirs and legatees, who were made parties to the suit by an answer of Butler, in the nature of a cross-bill, have manifested any desire to have said deeds to said company set aside or declared invalid.

It may also be observed, that though the purchase-money for said land has not been paid by the Waco Manufacturing Company, yet suit, with a prayer for the foreclosure of the

vendors' lien, has been brought upon the notes which it gave for the land, by the parties to whom they were transferred, and that Butler has intervened in said suit, and has brought into court the amount due upon the notes, proffering their payment on its being decreed that said company acquired a valid title to the land sold and conveyed as aforesaid by said T. C. Hood.

Appellants, who, as we have said, were the plaintiffs in the court below, claim to have acquired their title under an execution sale by the sheriff of McLennan county, by virtue of the levy, on the 22d day of March, 1869, of an execution issuing from the District Court of Washington county, on a judgment in favor of Browning and Matthews, as executors of William Keese, deceased, against said T. C. Hood and Mary M. Hood, as executors of Henry M. Hood, deceased. As the deeds, except the deed of ratification by Mrs. Hood, upon which appellees rely, were on record in McLennan county, and Butler was in actual possession of the land when the execution under which appellants brought was levied, it cannot be controverted, that appellants, as well as the judgment creditors, were chargeable with notice of whatever title or interest, either legal or equitable, if any, Butler had to the land prior to the date of such levy. If, on the other hand, he had no equitable interest in it at the date of the levy and subsequent sale by the sheriff, he, and those holding under him, cannot be heard to object to any mere irregularities in the judgment, and proceedings under it, offered in evidence by appellants to establish their title, and appellants should have had judgment for the land for which they sued, unless either the judgment, execution, levy, or sale under which they claim is shown to be absolutely null and void.

The first and important inquiry, then, is, had Butler any vested right or title to the land, or was it still the property of the estate of Henry M. Hood, sr., when the execution in favor of the executors of Keese was levied?

It is, we think, beyond question, that when a power is com-

mitted to two or more persons, unless it otherwise appears from the instrument by which it is delegated, all who have accepted the trust confided to them, so long, at least, as they continue to act, must join in executing the power, to insure its valid and legal execution. And this court has recently held, that a valid sale of land belonging to an estate could not be made by one of two executors, to whom such power was delegated, without the joinder, and against the consent of the other, although the purchaser supposed the sale was made with the consent of the other executor, and that a deed would be executed by both of them. (Hart v. Rust, 46 Tex., 556.) And also, that two executors, under a will with similar provisions to those in the will under which Hood's executors were acting, could not, without the joinder, and in opposition to the wish of the third, create a valid and binding obligation against the estate for the payment of money. (McLane v. Bevlin et al., supra, 493.) But we do not understand that appellees' counsel disputes this general proposition, or claims that one of several executors, under the provisions of Hood's will, could, of his own instance, sell land belonging to the estate, or that a deed executed by one of several executors, where the power conferred upon them is joint, will, of itself, operate as a strictly legal deed of conveyance, such as a court of equity would, in a suit for specific performance, compel a purchaser to accept. (4 Johns. Ch., 369.)

But they insist, that notwithstanding such deed cannot be upheld at law, yet the facts and circumstances connected with the sale of this land by T. C. Hood are such as to entitle the purchaser, or, at least, Butler—who is a purchaser for value from the original purchaser—to an equitable title to it, which should be maintained and enforced in a court of equity; that where a trust is executed by one of the trustees with the consent and approbation of the others, or when the others subsequently ratify the sale made by one, the act of the single executor will be regarded in equity as binding

upon the estate; and the deed by one executor, under such circumstances, is merely an irregular and imperfect execution of the power, which will be aided by a court of equity, and that a court of equity may enforce the specific performance of a parol sale of land, or hold executors and trustees bound by acts of estoppel, especially when the power under which they act is unshackled or coupled with a trust, as readily as it will in individuals acting in their own right, if it plainly appears that the interposition of the court is necessary to the ends of justice and to prevent fraud. A careful examination of the authorities to which we have been cited by counsel, leaves no reason, as we think, to doubt the correctness of these propositions. While they may be said to constitute exceptions to the general doctrine upon which appellants rely for a reversal of the judgment, they are as well recognized and as fully sanctioned and enforced in courts of equity, when the facts call for it, as the general rule itself. That it may be seen that such is the case, it is only necessary to examine some of the leading cases to which we are referred.

In the case of Roberts's Widow v. Stanton, 2 Mumf., 139, the testator, George William Fairfax, devised land to George Washington, George Nicholas, and William Miles Cary, by name, as trustees, to sell, &c.; and also appointed the same parties his executors. Cary, through an agent, sold the land, taking bond and security for the purchase-money. The court held that, as far as circumstances permit, courts of equity will supply defects in the execution of powers. Therefore, a conveyance by one executor or trustee only, instead of three, if, in all other respects, conformable to the intention of the testator, will be supported in favor of a purchaser for a valuable consideration.

In Taylor v. Adams, 2 Serg. & R., 533, the testator gave to his three executors, or the survivor of them, power to sell his land. One renounced the appointment; another, without being joined by his co-executor, entered into a written agree-

ment for the sale of the land, and received the whole of the purchase-money. But it was proved on the trial that the executor who had not signed the agreement had, previous to the sale, consented thereto, and that, subsequently, and before the commencement of the suit, he had confirmed it by parol, and that the purchaser had gone into possession, with the consent of both executors. The court say, the power to sell being in all the executors, it could not be executed by one; and therefore the purchaser derived no title by the written agreement, yet, connected with the other circumstances, he got thereby such a right or interest in the land that he could maintain ejectment against a party claiming adversely to his vendors.

And in the subsequent case of Silverthorn v. McKinster, 12 Penn. St., 67, the court say:

"As there was strong evidence that Thomas Miles, one of them, (the executors,) assented to the sale made by the other two, to Burns, it was properly left to the jury to say whether, in truth, the sale was made by all the executors; upon the principle that subsequent ratification is equivalent to precedent participation. (Taylor v. Adams, 2 Serg. & R., 534.) That case shows, too, that a general power to sell, given by last will, may be executed by parol, and that such a sale, partly executed by possession, passes an equitable estate to the vendee, recoverable in ejectment, notwithstanding the statute of frauds, just as a similar sale by one in his own right, conveys an available title. There is, in fact, in this respect, no difference between the exercise of a power to sell, unshackled by particular directions for its execution, and a sale made of one's own estate."

And in Newton v. Bronson, 3 Kernan, 593, it is held, that an executor or trustee to sell lands in his discretion, cannot authorize an agent to contract for them, because the power is a personal trust, which cannot be delegated. But when such a contract has been executed by an agent, if the principal ratifies it with full knowledge, he will render it valid and

binding; for in ratifying it he exercised the personal qual-
ities essential to the execution of the trust.

In Barr *v.* Hatch, 3 Ham., (O.,) 527, the court say:

" It is a general principle, that courts of equity may supply
defects in the execution of a power, when the original con-
tract was fair, and the power fairly given. And whenever
the intention to execute a power is sufficiently manifest, but
the execution is defective, or it has not been executed accord-
ing to the terms, or in the form prescribed, equity will correct
the mistake or supply the defect. * * * If the attorney
or agent has attempted to execute the power, but has done it
defectively, the party claiming under it cannot avail himself
of it at law, yet equity interposes its aid, upon the broad prin-
ciple of relieving against accident or mistake."

And in the case of Nelson *v.* Carrington, 4 Mumf., 332, it is
said: " If the written agreement of sale be signed by the
purchaser, and one of two acting executors, the other may, by
acts *in pais*, though not in writing, (such as delivering posses-
sion of the land, and the like,) manifest his assent to the sale,
and make it his own act;" and that " a vendor, by bringing
suit and obtaining judgment for the purchase-money, ratifies
and confirms the sale, so that it cannot be set aside at his in-
stance." (See, also, Tollet *v.* Tollet, 1 Lead. Cases in Eq.,
198; Thorp *v.* McCullum, 1 Gilman, (Ill.,) 628.)

If the principles recognized and affirmed in these cases
(which do not contravene or oppose the cases cited by appel-
lant, in which the general rule applicable in actions at law is
approved) are correct and should be applied in this case, the
judgment in favor of appellees is unquestionably correct;
for certainly it cannot be denied that the evidence before the
jury was amply sufficient to support the verdict in appellee's
favor, on several, if not all of the grounds upon which Butler
claims to have had a valid equitable title to the land, when
the execution under which appellants purchased was levied.

The judgment is affirmed.

AFFIRMED