TEXAS & P. RY. CO. v. SCHELB. (No. 681.)*

(Court of Civil Appeals of Texas. El Paso. June 14, 1917. Rehearing Denied June 28, 1917.)

1. APPEAL AND ERROR  995—REVIEW.

It is not the province of the court on appeal to determine the preponderance of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3907.]

2. MASTER AND SERVANT  127—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Employment to remove the main rods of an engine and place them on the engine frames in front of the cylinder is not such work as invokes the doctrine that when the servant is making repairs to machinery in unsafe condition the master is not required to provide a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 252.]

3. MASTER AND SERVANT  288(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

The question whether the servant assumed the risk is ordinarily for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068, 1069, 1087, 1088.]

4. MASTER AND SERVANT  276(5)—INJURIES TO SERVANT—PROXIMATE CAUSE—EVIDENCE.

Evidence *held* to warrant finding that negligence in permitting a defect in a locomotive step was the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959.]

5. APPEAL AND ERROR  731(1)—SCOPE OF REVIEW—PRESERVATION OF EXCEPTIONS.

An assignment of error that the verdict is contrary to law is too general to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3017.]

6. APPEAL AND ERROR  722(1)—REVIEW.

A variance in that an assignment of error is not a true copy of the assignment in the transcript because of slight error in copying does not preclude the court from passing upon the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2990, 2994–2996.]

7. DAMAGES  132(4)—EXCESSIVE DAMAGES—PERSONAL INJURIES.

Verdict of $7,750 was not excessive in favor of a railroad workman 50 years old in good state of health earning about $125 per month who by his injuries received a hernia and was incapacitated for heavy work.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 375.]

8. TRIAL ☞129—ARGUMENT OF COUNSEL.

In the absence of showing of prejudice, it was not error for plaintiff's counsel to state that the railroad would not hesitate to fire a man who had testified against it, where the railroad's counsel had stated that plaintiff's counsel would probably state that the witnesses were not to be believed because they worked for defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 310.]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by P. J. Schelb against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

S. N. Russell, of El Paso, for appellant. Moore & Harris, T. A. Falvey, and Volney M. Brown, all of El Paso, for appellee.

WALTHALL, J. Appellee, P. J. Schelb, brought this suit against appellant to recover damages for personal injuries alleged to have been sustained by him as the result of negligence of appellant while working as a mechanic on an engine belonging to appellant. The facts stated are, substantially, that it was necessary to dismantle an engine in appellant's roundhouse at El Paso for the purpose of sending same in a train to Big Springs for repair; that for the purpose of dismantling the engine it was removed from the roundhouse and placed on a track near the roundhouse in appellant's yards; that to transport said engine it was necessary that the main rods of the engine be removed and placed crosswise of the engine in front of the cylinders and to secure same by wire or otherwise; that appellee under the instructions of the foreman had placed the said rods in front of the cylinders, and while standing on the step at the pilot, trying to tie said rods with a wire, appellee's feet slipped off the step causing him to fall from the engine. It is alleged that while appellee was working on the engine and prior to the time appellee placed his feet on the step, by order of the foreman, the water in the engine was allowed to run out on the ground where appellee was required to work in dismantling the engine; that his feet became wet and muddy and likely to slip off the step; that the step did not extend out at right angles from the rod or bar to which it was attached as it should, but was out of repair, in that the outer part of the step was lower than the inner part and sloped downward from the inner to the outer parts, rendering same unsafe to stand on, and by reason thereof caused appellee's feet to slip off of said step and caused him to fall and become injured.

Appellee assigned negligence "in allowing the said step to so become out of repair and furnishing same to plaintiff to use in the discharge of his duty in such unsafe condition," and "in requiring plaintiff to do his said work on a side track, which defendant caused to become wet and muddy, instead of in the roundhouse, where the work could have been done with less danger to plaintiff." Appellee alleged that by reason of the said negligence he slipped off the step, and thereby received the injury causing a rupture and hernia of his abdomen, and alleged that the injury was permanent.

Appellant answered by general demurrer, general denial, and special pleas to the effect that at the time of appellee's injuries appellant owned and operated a line of railway from New Orleans, La., to El Paso, Tex., and was engaged in operating interstate trains and cars hauling interstate passengers and freight over its line of road; that the locomotive engine on which appellee was working at the time of his injury was standing on one of its tracks connected with its interstate track, and that the engine on which appellee was working had been and was up to the time of appellee's injury continuously used in interstate commerce, and that appellee was at the time of his injury employed by appellant and was engaged in interstate commerce; that if the step complained of was bent or defective as alleged said defect was open and obvious; that appellee knew its condition when he placed his feet on the step; and that appellee assumed the risk incident to the use of the step. Appellant pleaded contributory negligence in standing on the step with wet and muddy feet, when he could have stood on the ground and performed the work in tying the rods in front of the cylinders of the engine. The case was submitted to the jury on the general issue, and resulted in a verdict for appellee for $7,750.

[1] Appellant in its first assignment complains that the verdict is contrary to the preponderance of the evidence, in that the evidence, by a preponderance of it, showed that, if appellee was injured, it was on account of his own negligence. Under the assignment appellant submits four propositions. The first is to the effect that a servant while employed in interstate commerce by a carrier engaged in such commerce, where no negligence on the part of the carrier is shown, is not entitled to recover damages. The proposition assumes that no negligence on the part of appellant was shown. The issue of negligence on the part of appellant was submitted to the jury, and the jury found in favor of appellee. The verdict is supported by some evidence. It is not the province of this court to determine on which side of the issue the evidence preponderates. The second proposition submits that, where a carrier engaged in interstate commerce provides its servant, also employed in interstate commerce, with a reasonably safe place to work, etc., the carrier has performed its duty. The proposition is well sustained by many authorities, but the trouble is the jury evidently did not find that the appellant had provided the servant a reasonably safe place to work—the fact as-

sumed in the proposition. The proposition of law as submitted has no application.

[2] The third proposition asserts that the general rule requiring the master to exercise ordinary care to furnish a reasonably safe place to work has no application to cases in which the work the servant is engaged upon consists in making repairs, since the character of the servant's employment necessarily requires him to go upon and work on machinery that is in an unsafe and dangerous condition. The proposition has application on issues of assumed risk, the reason being that negligence cannot be charged to the master where the servant contracts to assume the very risk of which he complains. But such is not the case here. The appellee was not making repairs on the engine or on the step on the engine from which he fell, and it seems to us that the nature of his undertaking in taking down the main rods of the engine and placing same crosswise the engine frames in front of the cylinders and fastening them there, to be carried to the shops at Big Springs for repair of the broken right cylinder of the engine, was not such contract as involves the rule stated in the proposition. If the servant was undertaking to repair the engine, that is, render safe and suitable for use a thing not safe and suitable, he then becomes the inspector of the thing being repaired, and has equal opportunity with the master to see and know the defects of it, and it would then be inconsistent to require the master to have the thing in process of repair in a safe condition for the purpose of such employment. We hardly think the proposition is germane to the assignment, but thought to consider it.

[3] In any event the question as to whether the risk was ordinarily incident to the employment was a fact to be determined by the jury, and under the circumstances was not a question of law to be determined by the court. The fourth proposition is that the defects complained of must be shown to have been the proximate cause of his injury. The appellee in his evidence detailed the position of the step with reference to his work then being done, how it was fastened, and said:

"In order to properly tie and bind this rod on the front end of the engine, I had to stand on this step, which was the most convenient and most likely place where anybody would go or would stand. I was standing on the step here with both feet, had the wire in my hand, as I said, and I could not control the other end of the wire, and I reached out to get hold of the other end of the wire, when both of my feet suddenly fell out from under me. I fell and struck my abdomen, as I said. * * * As soon as I caught my breath I got down to see what caused my fall. * * * I stepped over to the other side, glanced down at the step, and I found the step was slipped down like that, * * * and I looked, and these two bolts were gone out of there, that is, the back bolt. When I looked after I fell, the step was slipped down. It was slipped down. I did not make any measurement of it, but, just guessing at it, I would be safe in saying 1¾ inches or 2 inches out of place. That back bolt was gone that held the

step in place there. * * * An upright piece to be properly constructed and attached to an engine should be at right angles. When I looked at it immediately after I had fallen, it was not at right angles. * * * My attention had not been called by anybody that the step was out of order. I had not had any occasion to observe it to see whether it was out of order or not. My attention was directed to wiring them rods. * * * I fell possibly 12 or 14 inches from this point. I fell that far with my body on the end of the beam."

[4] The witness also testified that his feet were muddy from alkali mud and water blown out of the boiler. From the above, stated more at length than we have quoted, the jury could have found that the proximate cause of appellee's injury was the defect in the step, aided more or less by the alkali mud and water on the ground, the negligence assigned.

The fifth proposition, suggesting a safer way of doing the work than standing on the step, is not germane to the assignment, and has no basis in the pleading. It was not an issue in any way submitted or requested to be submitted to the jury. The assignment is overruled.

[5] The second assignment is: "Because the verdict, of the jury is contrary to law." The assignment is too general to be considered. Neither the assignment nor the propositions thereunder distinctly point out that part of the proceedings contained in the record in which the error is complained of in a particular manner, so as to identify it; the propositions present abstract propositions of law, and in doing so assume facts otherwise than found by the jury, and assume facts and propositions of law not decided by the trial court. The assignment is not considered.

[6] Objection is made to a consideration of the third assignment on the ground that it is not a true copy of the assignment as it appears in the transcript. The variance is slight and wholly unimportant. It is evidently the result of an error made in copying, and under Cammack v. Rogers, 96 Tex. 457, 73 S. W. 795, this court may, in the exercise of its discretion, pass upon the assignment; but in so doing it is not to be understood that it is our intention to in any wise depart from the rule heretofore announced by this court that it will not consider reconstructed assignments. Fessinger v. El Paso Times Co., 154 S. W. 1171; Ruth v. Cobe, 165 S. W. 530; Mt. Franklin, etc., v. May, 150 S. W. 756; Lakeside Irr. Co. v. Buffington, 168 S. W. 21.

[7] The evidence is too lengthy to quote here in full. It shows that at the time appellee was injured he was about 50 years old, and while he had had an operation for appendicitis some 13 years previously, he seems to have fully recovered, and at the time of his injury was in a good state of health and earning about $125 per month. Dr. Schugt examined the appellee on two different occasions, the difference in time not

clearly shown, but the doctor testified that appellee's condition had grown worse, disclosing an increased hernia, as shown in the two examinations, and that his injury incapacitates him from any heavy work. We cannot say that the verdict is excessive. The assignment is overruled.

[8] The fourth assignment complains of the following remark of counsel in his closing argument to the jury:

"The railroad would not hesitate to fire a man who testified against it in five minutes, that is my opinion, gentlemen," and, "if the defendant's witnesses were to come into court and testify against its interest, their jobs would not last five minutes."

The remarks were objected to and the objection overruled by the court. The court, in signing the bill of exception, stated that counsel for the defendant had in his argument to the jury stated in substance that Mr. Moore (the attorney making the objectionable remarks) will probably state to you that defendant's witnesses are not to be believed because they work for defendant: that at least that was what he usually stated to the jury in trial of this case. The argument of counsel is not to be commended, but it may have been provoked by appellant's argument. It does not appear that the argument had any effect whatever on the jury and we cannot say that it did. San Antonio, U. & G. R. Co. v. Hagen, 188 S. W. 954.

Finding no reversible error, the case is affirmed.