GRAND LODGE OF COLORED K. P. OF TEXAS v. ALLEN. (No. 1629.)

(Court of Civil Appeals of Texas. Amarillo. March 24, 1920. Rehearing Denied April 28, 1920.)

1. Appeal and error ⬤⟹722(1)—Assignment, practically following assignments on motion for new trial, will be considered, though a reconstructed assignment.

Where an assignment of error practically followed two assignments in the motion for new trial, the fact that it was a reconstructed assignment, and presented the refusal to give two, instead of one, requested charge, will not prevented consideration.

2. Appeal and error ⬤⟹742(5)—Where assignment shows the charge refused, it need not be repeated in statement.

Where the assignment itself was a copy of the refused charge, and referred to the transcript page where the bill of exceptions showed the charge was requested and refused, such matters need not be repeated in the statement.

3. Appeal and error ⬤⟹742(1)—Reference to bill of exceptions in assignment will not preclude consideration.

While the reference to the bill of exceptions and to the motion for new trial may be a technical violation of rule 31 as to making statements, it will not prevent consideration of an assignment of error.

4. Principal and agent ⬤⟹92(3) — Where a lodge designated a building commission, authority will be deemed conferred on all members.

Where a fraternal organization designated a building commission, consisting of several individuals, the authority will be deemed conferred on each of the commissioners as joint agents, and no one or more of the commissioners less than the whole has power to bind the organization.

5. Contracts ⬤⟹28(3)—Evidence insufficient to establish oral contract between owner and subcontractor for extras.

In an action by subcontractor for extras under alleged oral contract with owner, evidence *held* insufficient to establish the making of such oral contract.

6. Principal and agent ⬤⟹101(4)—Subcommittee of a building commission without ostensible authority to make oral contracts.

The subcommittee of a building commission of a fraternal organization *held* not to have ostensible authority sufficient to bind the organization by an oral contract with subcontractor for extras.

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Appeal and error ⬞673(2)—Record insufficient to show whether action was barred.**

Where an action by subcontractor against architect, contractor, and owner was originally filed in time, and second amended original petition, making owner sole defendant, was later filed, the question whether the plea of limitations was available against the second amended original petition cannot be considered, where the record did not contain the original pleadings.

**8. Frauds, statute of ⬞23(2)—No defense to action on oral contract for extras.**

The statute of frauds is not available as against an oral contract by owner to pay subcontractor for extras.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Sim Allen against the Grand Lodge of Colored Knights of Pythias of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Claude C. Westerfield, of Dallas, for appellant.

S. C. Lewis, Noah Roark, and Thompson, Knight, Baker & Harris, all of Dallas, for appellee.

HUFF, C. J. Sim Allen sued the appellant, Grand Lodge of Colored Knights of Pythias of Texas, alleging substantially that the appellant, acting through its duly and legally authorized agents, J. W. Anderson and W. Sidney Pitman, did, on or about the 10th day of June, 1915, make and enter into a verbal contract with him to perform certain additional work, which was not included in his contract, which had been executed for the consideration of $7,770.60; that said additional work consisted of furnishing and placing 5,483 cubic feet of concrete in and to the foundation of the Grand Lodge's temple, being erected at Dallas, which work was worth $1,985.90, and also for certain other extra work thereon of the value of $124.40. A verdict was rendered for Allen, and judgment thereon, from which this appeal is prosecuted.

On the 17th day of June, 1910, by a resolution of the Grand Lodge, the Grand Chancellor was authorized to appoint a building commission, consisting of five persons, together with himself. The resolution pertinent to the issues here provided:

"Second. The said commission shall have plenary power in all matters pertaining to proposals from rival cities and in selecting for the erection of said Pythian Temple, a desirable site.

"Third. That the said commission shall have plenary powers to contract for any and all materials necessary to the construction of the Pythian Temple, and during its erection and completion the said commission shall supervise the construction of the temple and until said temple has been completed, turned over to, and accepted by the Grand Lodge, the commission shall have charge of the same."

The commission appointed consisted of A. N. Prince, Grand Chancellor, J. W. Anderson, Geo. M. Guest, J. M. Frierson, J. H. Hines, and M. M. Rogers. The appellant is a fraternal organization, incorporated under the laws of the state of Texas, and has jurisdiction over subordinate lodges in various parts of the state and in other countries, and on the 17th day of May, 1915, appellant, through its commission above appointed, entered into a contract with S. A. Harper to erect, finish, and complete a Grand Lodge temple building, and to furnish and provide material and work therefor, except all steel structure, iron work, and iron stairways, fire escapes, etc. This contract had attached to it the plans and specifications of the building, giving the details of the work, specifying that W. Sidney Pitman was superintending architect, giving him the usual powers of such architect, and providing also for extra work, requiring that the work should be upon the written order of the architect, which was required to be presented upon a written order from the owner. The owner was defined in the contract to mean the building commission above mentioned.

The appellee, Sim Allen, entered into a written contract with Harper, and agreed, for the consideration of $7,770.60, to be paid by Harper, to carry out the provisions of the plans and specifications, to do all the excavation, all cement and concrete in the foundation, and all cement and concrete work on the first floor, to do all plastering inside the building, to furnish the materials, etc., with the stipulation that all extra work be allowed and paid for on the unit basis, in accordance with the plans and specifications. This contract bears date June 27, 1915. The evidence shows that Allen began work on the excavation some time in May, and he testifies that he was working under Harper, under an oral contract, and that he put down the excavation the depth called for by the plans and specifications, under such contract. The plans and specifications called for excavations to be not less than 4 feet in depth. It appears from the facts in this case that at that depth they found the nature of the soil such that it was not regarded safe to rest the foundation on it, and it was determined to go to a greater depth, and the architect, together with the consulting civil engineer, directed that the excavation be deepened. It is at this point that Allen claims that he entered into an oral contract with the appellant.

The facts show that there was a subcommittee, appointed by the commission, consisting of Dr. Anderson, A. N. Prince, and M. M.

Robinson. The testimony shows this subcommittee was created to look after minor things and save expenses; Anderson says, also, to manage the business there in town, and look after the work, and receive estimates from the architect, and make payments on the work. The appellee testified substantially that the verbal contract he made was when they did not find good soil and that he had to go deeper; that he made a verbal contract with Dr. J. W. Anderson, of the building committee, and A. N. Prince. He also spoke to M. M. Rogers about it, who told him to do what Pitman said to do, and that he would be pleased with it. He says that Pitman and Anderson instructed him to go down the additional depth, and Anderson told him that was in Harper's contract, and they would pay him every dollar on the unit basis; that basis was 40 cents per cubic foot; that he went the depth, specifying the depth under each pillar, etc. Anderson states substantially that the contract called to go down at least 4 feet, but in some places they went down twice that far; that Allen inquired of him about going down, and that he told him the Grand Lodge was responsible for extras; that he worked under the direction of the contractor, and that he told him to be governed by the instructions of Pitman, the architect, and to do whatever the architect told him.

It seems that Anderson contended with the rest of the committee that the Grand Lodge was responsible for the work done, as he had done the work under the direction of Pitman, and that, if Pitman had recommended it, the Grand Lodge would have paid it. It appears, also, that after this work was done, for which suit was instituted, that the architect made out a statement of the extra work, giving the Grand Lodge credit for certain things, leaving a balance due on the extra work of $88. This was presented to the commission, and they ordered it paid, and the contractor, Harper, directed the keeper of the records and seals to make the check payable to Allen. Allen declined to accept the check as a settlement of the matter.

[1] The appellee objects to assignment No. 1, because it is asserted the assignment is not a copy of any assignment in the motion for new trial, and is a reconstructed assignment. The assignment set out in the brief asserts error in refusing to give specially requested charges 14 and 17. The two charges requested are set out in the assignment. Charge 14 is a literal copy of the charge requested, and is the same as the assignment in the motion for new trial, except in the motion it is presented with a statement to the effect that the court erred in its failure and refusal to give special instruction No. 14, submitted by the defendant, as follows—the charge requested being given.

Charge 17, as copied in the brief, omits one, clause, evidently by inadvertence, but leaves the meaning of the charge unchanged, and is also presented in the motion by the assertion that the court erred in refusing to give requested instruction No. 17. We do not think we would be justified in refusing to consider these assignments, upon the ground that the assignment is not a copy of the motion, or because it is a reconstructed assignment. The omission was evidently clerical, and the formal introduction of the assignments does not in fact change the assignment, and is wholly immaterial as to the assignment of error of which a review is sought. Our Supreme Court, in discussing the construction to be given to the amendment of the statute (Rev. St. 1911, art. 1612), by the act of 1913 (Acts 33d Leg. [1913] c. 136 [Vernon's Sayles' Ann. Civ. St. 1914, art. 1612]), with reference to a trial before the court, intimates that in trials before a jury that it would be highly technical to confine the assignment of error to the exact language used in the motion. Hess v. Turney (Sup.) 203 S. W. 593. See, also, Wyss v. Bookman, 212 S. W. 297. Where the variance is slight in making the copy into the brief, it is the practice of the courts to disregard such variance and to consider the assignments. Railway Co. v. Schelb, 196 S. W. 881 (6); Rector v. Bank, 180 S. W. 309 (2); Smith v. Bogle, 165 S. W. 35; Douthitt v. Farrar, 159 S. W. 182.

[2, 3] It is also objected that the statement under the assignment does not show or set out the charges, or that they were requested and refused. The assignment itself is a copy of the charge, and asserts that they were requested and refused, referring to the transcript page where the bill of exceptions shows such fact, and also the page where it is set out in the motion for new trial. It would have been superfluous to have repeated such facts in the statement under the assignment. The reference to the bill of exception and to the motion for new trial in the assignment is perhaps a technical violation of rule 31 (142 S. W. xiii), as to making statements; but it is not such as should defeat a consideration of the assignment. Young v. Sorenson, 154 S. W. 676; Railway Co. v. Pemberton, 106 Tex. 463, 161 S. W. 2, 168 S. W. 126.

[4] Assignment 1 is to the action of the court in refusing peremptorily to instruct a verdict for appellant. Instruction 14 requested such instruction, on the ground that the uncontroverted evidence as to the alleged extra work, if done, was not contracted for by appellant or the building commission. Special instruction 17, requested, is that the uncontroverted evidence shows that all the extra work to be done on the building was contracted for in writing by the building commission, which was the only agency that could make any contract affecting the erec-

tion of the building, etc. It is asserted by propositions thereunder to the effect that an agency delegated to two or more persons cannot be exercised by a less number than those who accepted the trust. They could not delegate their authority, unless given a special power to do so.

If the appellee was entitled to recover anything in this case under his pleadings, it was upon a verbal contract with the agents of the Grand Lodge. It is not pretended that he made any contract with the lodge itself, but that the contract was made by its authorized agents. The right to contract was vested by the Grand Lodge in a commission, consisting of six members. It is not pretended that the contract sued on was made by the commission, acting as a body. It is insisted that a subcommittee made the contract with appellee. The Grand Lodge made the six commissioners its joint agents. Authority conferred on two or more to represent their principal in the transaction of business of a private nature it ordinarily will be presumed was conferred upon all from considerations of a personal nature, and in order to derive the benefit of their combined experience, discretion, or ability. Such business usually can be performed only jointly unless an intent appears that it may otherwise be executed. Mechem on Agency, vol. 1, §§ 195-198, inclusive; 2 C. J. "Agency," § 318; 31 Cyc. 1426 (b), 1412(3); Unterberg v. Elder, 211 N. Y. 499, 105 N. E. 834, Ann. Cas. 1915C, 616; Wright v. Dunn, 73 Tex. 293, 11 S. W. 330; Franco, etc., v. McCormick, 85 Tex. 416, 23 S. W. 123, 34 Am. St. Rep. 815; International, etc., v. Duncan, 194 S. W. 956(3). We cite, also, cases in this state which hold that joint powers must be executed by all. Giddings v. Butler, 47 Tex. 535; Hart v. Rust, 46 Tex. 556; House v. Kendall, 55 Tex. 43. If the agency is for a body public in its nature, or created by law, the rule appears to be that a majority may act. Mechem on Agency, 1199. Such is the case of Brown v. District of Columbia, 127 U. S. 579, 8 Sup. Ct. 1314, 32 L. Ed. 262, cited by appellee. And such appears, also, to be the rule with reference to directors of a corporation or the like. 10 Cyc. 779.

In this case, however, the allegation is that a verbal contract was made with one of the commissioners and with the architect. The evidence clearly indicates there was no contract with the commission as a body or with the subcommittee. The commission had entered into a contract with Harper to do the entire work here sued for by Allen. The contract with Harper covered the work and material to be placed in the foundation of the building and for compensation for extra work or material. Allen was evidently working under Harper in excavating to a depth of not less than 4 feet, whether his written contract was then signed or not. He did that work,

and Harper paid him according to the written contract, which he accepted. When Allen approached Anderson and Rogers, they told him to do what the architect directed, and the Grand Lodge would pay for it. The architect's powers were defined under the written contract with Harper. It is not to be presumed the lodge ever empowered the commission to obligate it to pay two contractors for the same work, or that the commission or any member of it ever so contracted. If they did, it was without the power to bind the lodge.

[5] Aside from the question of power, we do not think the evidence shows an independent verbal contract between Anderson and Allen to do the work sued for. Allen, by his own testimony, shows that he was working under Harper, under a verbal agreement with Harper. While so working, he went 4 feet, the depth called for in the specifications; that the architect, Pitman, directed that the foundation go deeper, as a clay foundation had not yet been reached. Allen testified that Pitman and Dr. Anderson—

"instructed me to go down that additional depth that I went down. Dr. Anderson told me that was in Harper's contract, and they would pay me every dollar on the unit basis; that basis is 40 cents per cubic foot."

In other places, however, he seems to state that it was not to be paid under Harper's contract. Anderson, in substance, testified Allen worked under the direction of Contractor Harper; that when Allen came to him he told Allen the Grand Lodge would be responsible for extra work and to be governed by instructions of Pitman, the architect, who was employed by the commission. Anderson testified he had no authority to authorize Allen to do extra work, as the plans and specifications had been made.

"I meant by extras anything not in the original plans and specifications that the contractor authorized him to do; to get instructions from the contractor before performing the work."

Rogers only referred Allen to the architect for instructions. The architect also shows that this work was done under Harper's contract, which provides for the payment of the class of work in question on the unit basis. Allen's written contract with Harper also provides that all extra work be allowed and paid for on a unit basis, in accordance with the plans and specifications. It is apparent that all parties regarded the work sued for as extras, provided for by the written contract made with Harper, and was to be paid for under the terms of that contract, and of Allen's contract with Harper, and the work was directed by the architect under Harper's contract, and that it was not the purpose to make an independent verbal contract with Allen, separate and

apart from Harper's contract. The architect did make a certificate for this work as extras for the sum of $88, and a check was issued to Allen by direction of Harper, which Allen declined to accept. The commission appointed by the lodge refused to go over the head of the architect. If the architect acted fraudulently or arbitrarily in the matter, Allen had his remedy against his employer, Harper, and possibly against appellant; but he has not chosen that course in this case, but, on the contrary, he released Harper by a written release. He relies on an oral contract with the lodge, through its agents. This we think he did not establish, because the agent with whom he claimed to have contracted had no such authority, and also we think that the evidence shows the extras for which he charges were directed to be done under Harper's contract, and not upon an independent verbal contract, as alleged.

[6] The rule of ostensible authority, we think, will not apply so as to grant Anderson and Pitman the power to contract in the name of the lodge verbally. There is no evidence that it suffered these parties to make contracts for it, or that it adopted such contracts, or sanctioned contracts made by them. Their acts and authority were limited by the resolution of the Grand Lodge and the contract with Harper for the entire construction under the superintending architect. The powers of Anderson and Pitman were derived from the two instruments, and were expressly specified. They do not include the power to supersede a contract legally made by the authorized commission to do the very work sued for by a verbal contract with a different party to the one named in the written contract. There is no pleading presenting the issue of ratification, and we do not think the evidence presents the issue. The subcommittee was not authorized by the commission to make contracts. Their duties were purely ministerial. They were to look after emergencies, call the committee together, and to look after minor things and save expenses. They were to look after the work as being done, receive estimates from the architect, and make payments on the work.

[7] It is also claimed by appellant the cause of action was barred by the two-year statute of limitations. The two-year statute applies to the cause set up. The suit was originally instituted against Harper, Pitman, and the Grand Lodge for extras under the written contract, which was filed June 10, 1916. This case was tried on a second amended original petition, filed March 12, 1918, setting up as his cause of action a verbal contract with appellant, dropping therefrom Harper and Pitman. Without attempting to determine whether the second amendment set up a new cause of action, we have concluded that we could not, under the record as made

in this case, determine whether the cause of action was barred. The record is silent as to what cause was set up by the amended original petition, or the first amended original petition, or when they were filed. If either of them were filed within the statutory period, setting up the verbal contract, this action would not be barred.

[8] The other questions presented, we think, are not necessary to be discussed under the disposition that we now make of the case. We may say, however, that the statute of frauds has no application, if there had been in fact a verbal contract with appellant, as alleged, and so the question of appellant's liability to Allen under Harper's contract need not be discussed, as appellee only sought to recover on a verbal contract with the appellant, independent of Harper's contract.

The judgment of the court will be reversed, and the cause remanded.